Alexander Del G-iorno, J.
In order that the results arrived at by the court may be understood properly, it is considered necessary that this memorandum decision be written to supplement the signed findings of fact and conclusions of law submitted by both parties.
On September 26, 1957 the State appropriated the property known as the Harvey School in connection with contemplated extensive improvements on the Taconic Parkway at Hawthorne Circle, Westchester County.
The Harvey School was established in the year 1916. It is a boarding school for boys from the fourth grade to the eighth grade, both inclusive. The institution is comprised of some 22 frame-construction buildings which are operated as a unit. The land involved is just about 67 acres; the 22 acres comprising the campus are fairly level, rolling ground, and the remaining 45 acres are of a rugged, hilly nature.
*925 In addition to the buildings, one finds on the campus, landscaping, a small lake, a swimming pool, a tennis court, an athletic field and a water and sewage system. The buildings, trees, shrubs and lawns are spaced in a most attractive fashion. The landscaping; is excellent throughout. There are numerous and various cultivated trees, many of which are very large, everywhere on the campus. Many types of pine trees are there. Flower borders are all about. The hilly terrain back of the campus and its wood growth all add to the refined and pleasant atmosphere so readily apparent. Without any doubt, the directors built, and since have kept this school as a neat, dignified and distinctive educational establishment.
However, also apparent to the court was the fact that the buildings were old, with some of the sleeping quarters presenting a constant fire hazard. All the buildings were nonfireproof and only some were partially fire-resistant because of the installation of a sprinkler system in some places. There were clear signs of age all about, particularly in the interior of the buildings. Generally, it seemed to the court that there was before me a well-run school establishment which was physically inadequate to perform its functions according to the standards of this age.
This comment is offered, not by way of criticism, but rather in appreciation of the handicaps which were overcome while the standing of this fine institution was maintained at a high level.
On this trial both parties have been eminently fair in their approach to the value of this taking. Both agree that the Harvey School, a nonprofit educational institution, is a specialty. The court readily concurs with this viewpoint and decides that the damages herein must be assessed upon the basis of the exceptional rule of specialty valuation.
Both sides further agree, item for item, as to the replacement value of the buildings and other installations. Mr. Watson, for the claimant, and Mr. Murphy, for the State, the two building experts, disagree only as to the percentage of depreciation to be allowed against each building. Mr. Lachenbruch, the realty appraiser for the claimant, adopted in full, Mr. Watson’s replacement value of each item, less the depreciation cost thereof as presented by Mr. Watson, to which he added his own evaluation of the land, which he valued at $6,000 per acre for the 22 campus acres, and the remainder at $2,000 per acre. He added thereto for the trees, shrubs, water supply, small lake, tennis, sewer, roads, etc., $31,200. He came up with a total evaluation of the Harvey School of $897,500. Mr. Lachenbruch *926 disregarded entirely the assertion of the State that obsolescence or functional depreciation should also be considered in arriving at a true value. He frankly stated that since the school functioned as a school, he would consider neither obsolescence nor functional depreciation against it. Mr. Keller, the realty appraiser for the State, also adopted the building experts’ building costs, but his depreciation computation of the buildings represents not only the physical depreciation but also functional depreciation plus obsolescence. On such basis he figured the depreciated value of the installations at $387,500. For the land he allowed, for the campus, 25 acres at $2,500 per acre or $62,500; and for the balance of 42 acres $1,000 per acre, or $42,000; thus allowing to the claimant the total sum of $492,000 for his damag’e.
The court differs in part with the views expressed by both realty appraisers. I make no allowance for obsolescence as such, for the court is convinced that obsolescence was considered both by Mr. Watson and by Mr. Murphy, the building experts, in arriving at their depreciation figures. Functional depreciation, in the court’s opinion, must be given consideration as affecting the condition or utility of the premises in order to arrive at a proper assessment of damage. (People ex rel. City of New York v. Barker, 34 N. Y. S. 2d 510; United States v. 3.71 Acres of Land, 50 F. Supp. 110; 2 Orgel, Valuation under Eminent Domain [2d ed.], § 197, pp. 50, 53.) The functional depreciation arises from the manner in which the total establishment would be or was operated.
The pertinent test, as the court views the facts herein, is as follows: Assuming one wanted to purchase the entire property to continue using it as a boarding school, what would he consider before making his offer? Undoubtedly, he would consider the construction of the buildings, whether brick or frame; he would consider the exterior aspects of the buildings and their state of repair; he would closely examine the interior of the buildings, especially the condition of ceilings, walls, floors, electrical equipment, type and condition of heating equipment, the number of rooms and adequacy thereof for the purposes intended; the possibility of continuing unimpaired the services presently provided, all with reference, in his mind, to the contemplated capital investment and, more so, to the function thereof as well as to the maintenance expenses.
These observations would have a dominant influence upon the purchaser in arriving at a fair offer for the premises. The functional handicap offered by the large number of buildings *927 used to perform a single service, and their type and condition, without doubt would influence the offer he would submit.
The court found that the buildings used for school and sleeping quarters were generally unsafe in the event of a fire, not only because they were of frame construction, but because of the inadequacy of protection provided therein. Children slept in small rooms along long and relatively narrow corridors with insufficient fire escapes; and where fire escapes were afforded in some buildings they were almost unreachable to so young a group. True, the children were in the charge of a schoolmaster, but he could be of little help in the event of a holocaust.
The school activities being dispersed as they were, made the function of the buildings for that purpose somewhat less than ideal.
The efficacy of the school was not due, in the main, to the desirability of the accommodations afforded the children, but rather to the dedicated and efficient staff which was supervised by a headmaster whose interest in the comfort and safety of the children was paramount with him.
The court reiterates that it was most highly impressed by the dignity of the Harvey School and by the solicitude of its teaching staff, as testified to by the headmaster. These attributes will, fortunately, be put to good use in another location. The school will continue its excellent services.
For the purpose of this decision, however, we must be concerned now with the value of what is left behind. The court has arrived at a total value of all the buildings and other installations upon the land of $465,000. For the 22 acres which comprise the campus, including trees, shrubs, water supply, sewage disposal system, swimming pool, concrete dam, tennis courts and other appurtenances, the court fixes a value of $4,000 per acre or a total of $88,000. The remaining 45 acres, the court values at $1,750 per acre or a total of $78,750. The total award to the claimant amounts to $631,750, from which must be deducted the sum of $300,000 already paid by the State to the claimant, thus leaving’ a balance to be paid to the claimant in the sum of $331,750, with interest on the latter sum from September 26,1957.
The foregoing constitutes the written and signed decision of the court pursuant to section 440 of the Civil Practice Act on which judgment may be entered.